**RECORD NO. 14-1464**

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

FREIGHT DRIVERS AND HELPERS LOCAL UNION NO. 557
PENSION FUND,

*Plaintiff-Appellant,*

v.

PENSKE LOGISTICS LLC;
PENSKE TRUCK LEASING CO., L.P.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE
(HONORABLE ELLEN L. HOLLANDER, PRESIDING)

### OPENING BRIEF OF APPELLANT

Paul D. Starr
ABATO, RUBENSTEIN &
ABATO, PA
809 Gleneagles Court,
Suite 320
Baltimore, MD 21286
(410) 321-0990
pstarr@abato.com

*Counsel for Appellant*

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Appellant, Freight Drivers and Helpers Local Union No. 557 Pension Fund, by its Plan Sponsor, the Joint Board of Trustees ("Pension Fund"), pursuant to Fed. R. App. P. 26.1 and Local Rule 26.1, makes the following disclosure:

1.     The Pension Fund is not a publicly held corporation or other publicly held entity;

2.     The Pension Fund does not have any parent corporations;

3.     The Pension Fund is an employee health benefit plan that exists for the purpose of providing health and welfare benefits to participants, and therefore does not issue stock;

4.     No publicly held corporation or other publicly held entity has a direct financial interest in the outcome of the litigation;

5.     The Pension Fund is not a trade association.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES................................................................iii

JURISDICTIONAL STATEMENT........................................................1

STATEMENT OF ISSUES..................................................................2

STATEMENT OF CASE.....................................................................2

SUMMARY OF ARGUMENT..............................................................8

ARGUMENT......................................................................................9

        STANDARD OF REVIEW..................................................9

I.     THE PENSION FUND PROPERLY BROUGHT
       AN ACTION TO VACATE OR MODIFY AN
       ARBITRATOR'S AWARD UNDER 29
       U.S.C. § 1401(b) BY FILING A COMPLAINT...............................10

          A.    The Federal Arbitration Act's Requirement
                That Any Application to a Court Be Made
                By Motion is Inconsistent with ERISA,
                and Therefore Inapplicable to an
                Action Brought Under Section 1401(b)....................................10

          B.    Courts Presiding Over, and Parties to, Actions to
                Vacate, Modify or Enforce an Arbitrator's Award
                Under MPPAA Are in Apparent Accord With
                the Pension Fund's Reading of Section 1401(b)......................15

II.    THE PENSION FUND'S AMENDED COMPLAINT
       RELATED BACK TO THE FILING DATE OF THE
       COMPLAINT......................................................................22

III.    ASSUMING, <u>ARGUENDO</u>, THE PENSION FUND
        MUST HAVE BROUGHT THE UNDERLYING
        ACTION BY MOTION RATHER THAN
        COMPLAINT, EQUITABLE CONSIDERATIONS
        REQUIRE THAT THE DISTRICT COURT
        ADDRESS THE MERITS OF THE PENSION
        FUND'S ACTION TO VACATE OR MODIFY
        THE ARBITRATOR'S AWARD......................................................23

CONCLUSION...................................................................................................27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

## CASES

Amalgamated Insurance Fund Trustees v. Sheldon Hall Clothing, Inc.,
683 F. Supp. 986 (E.D. Pa. 1988), aff'd, 862 F.2d 1020 (3d Cir. 1988),
cert. denied, 490 U.S. 1082 (1989)...........................................................19

ANR Coal Co., Inc. v. Cogentrix of North Carolina, Inc., 173 F.3d 493
(4th Cir. 1999), cert. denied, 528 U.S. 877 (1999)............................................25, 26

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)...........................................26

Board of Trustees, Sheet Metal Workers' National Pension Fund v. BES
Services, Inc., 469 F.3d 369 (4th Cir. 2006)..........................................................25

Bowers v. Andrew Weir Shipping, Ltd., 27 F.3d 800 (2d Cir. 1994),
cert. denied, 513 U.S. 1000 (1994)..........................................................................25

Bright Construction, Inc. v. Carpenters District Council of Kansas
City Pension Fund, 2013 WL 1741984 (W.D. Mo. Apr. 23, 2013)..................15, 27

CenTra, Inc. v. Central States, Southeast & Southwest Areas Pension Fund,
585 F. Supp. 2d 1017 (N.D. Ill. 2008), aff'd, 578 F.3d 592 (7th Cir. 2009),
cert. denied, 559 U.S. 1006 (2010)..........................................................................17

Central States, Southeast & Southwest Areas Pension Fund v.
Georgia-Pacific LLC, 2010 WL 431674 (N.D. Ill. Feb. 2, 2010), aff'd,
639 F.3d 757 (7th Cir. 2011)....................................................................................19

Central States, Southeast & Southwest Areas Pension Fund v. Hunt Truck
Lines, Inc., 43 F. Supp. 2d 942 (N.D. Ill. 1999), aff'd, 204 F.3d 736
(7th Cir. 2000)...........................................................................................................17

Central States, Southeast & Southwest Areas Pension Fund v. Safeway, Inc.,
1999 WL 787599 (N.D. Ill. Sept. 29, 1999), aff'd, 229 F.3d 605
(7th Cir. 2000)...........................................................................................................18

Charvat v. ACO, Inc., 2012 WL 847328 (D. Neb. Mar. 13, 2012).........................24

Chicago Truck Drivers, Helpers and Warehouse Workers Union
(Independent) Pension Fund v. CPC Logistics, Inc., 2011 WL 3471087
(N.D. Ill. Aug. 8, 2011), aff'd, 698 F.3d 346 (7th Cir. 2012)................................16

Chicago Truck Drivers, Helpers and Warehouse Workers Union
(Independent) Pension Fund v. CPC Logistics, Inc., 698 F.3d 346
(7th Cir. 2012)........................................................................................................3

Chicago Truck Drivers, Helpers and Warehouse Workers Union
(Independent) Pension Fund v. Louis Zahn Drug Co., 890 F.2d 1405
(7th Cir. 1989)......................................................................................................20

CIC-TOC Pension Plan v. Weyerhaeuser Co., 911 F. Supp. 2d 1088
(D. Ore. 2012).......................................................................................................17

Conley v. Gibson, 355 U.S. 41 (1957)..................................................................26

Crown Cork and Seal Co., Inc. v. Central States, Southeast & Southwest
Areas Pension Fund, 1992 WL 70343 (E.D. Pa. Mar. 31, 1992), aff'd,
982 F.2d 857 (3d Cir. 1992), cert. denied, 508 U.S. 972 (1993)............................18

E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435
(4th Cir. 2011)........................................................................................................9

HOP Energy, LLC v. Local 553 Pension Fund, 2010 WL 3398475
(S.D.N.Y. Aug. 26, 2010), aff'd, 678 F.3d 158 (2d Cir. 2012)..............................17

Iron Workers Local 473 Pension Trust v. Allied Products Corp., 8 Empl.
Benefits Cas. (BNA) 1959 (N.D. Ill. Dec. 8, 1986), rev'd on other grounds,
872 F.2d 208 (7th Cir. 1989), cert. denied, 493 U.S. 847 (1989)...........................19

Iron Workers Local 473 Pension Trust v. Allied Products Corp.,
872 F.2d 208 (7th Cir. 1989), cert. denied, 493 U.S. 847 (1989)...........................14

Michigan United Food and Commercial Workers Unions and Food
Employers Joint Pension Fund v. Eberhard Foods, Inc., 831 F.2d 1258
(6th Cir. 1987)......................................................................................................21

Northern New England Carpenters Pension Plan and Trust v. H.P. Cummings
Construction Co., 2003 WL 1856440 (D. Me. Apr. 10, 2003)................................17

Oregon-Washington Carpenters-Employers Pension Trust Fund v. BQC
Construction, Inc. Hardware Service, 485 F. Supp. 2d 1206 (D. Ore. 2007)..........16

O.R. Securities, Inc. v. Professional Planning Associates, Inc., 857 F.2d 742
(11th Cir. 1988)....................................................................................26

Parmac, Inc. v. I.A.M. National Pension Fund Benefit Plan A, 872 F.2d 1069
(D.C. Cir. 1989)....................................................................................18

Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Va. Pension
Fund, 718 F.2d 628 (4th Cir. 1983), cert. denied, 467 U.S. 1259 (1984)...............14

Roofers Local No. 30 Combined Pension Fund v. D.A. Nolt, Inc.,
719 F. Supp. 2d 530 (E.D. Pa. 2010), aff'd, 444 Fed. App'x 571
(3d Cir. 2011)......................................................................................16

RXDC, Inc. v. Oil, Chemical and Atomic Workers Union-Industry Pension
Fund, 781 F. Supp. 1516 (D. Colo. 1992)................................................18

Sherwin-Williams Co. v. New York State Teamsters Conference Pension
and Retirement Fund, 969 F. Supp. 465 (N.D. Ohio 1997), aff'd,
158 F.3d 387 (6th Cir. 1998), cert. denied, 526 U.S. 1017 (1999).........................20

Taylor v. Lantagne, 2012 WL 256170 (W.D. Mich. Jan. 27, 2012), vacated on
other grounds, 541 Fed. App'x 539 (6th Cir. 2013)..................................24

Teamsters Pension Trust Fund of Philadelphia and Vicinity v. Fuqua
Industries, Inc., 1992 WL 70418 (E.D. Pa. Mar. 31, 1992), aff'd, 981 F.2d
1248 (3d Cir. 1992), vacated on other grounds, 509 U.S. 901 (1993)...................17

Trustees of Central Pension Fund of International Union of Operating
Engineers and Participating Employers v. Wolf Crane Service, Inc.,
Case No. 97-06195 (S.D. Fla. Apr. 13, 1999), vacated on other grounds,
374 F.3d 1035 (11th Cir. 2004)................................................................18

Trustees of Central Pension Fund of International Union of Operating
Engineers and Participating Employers v. Wolf Crane Service, Inc.,
374 F.3d 1035 (11th Cir. 2004)........................................................14, 25

Trustees of Western Council LPIW-Timber Operators Pension Fund v. American Maid Products Corp., 6 Empl. Benefits Cas. (BNA) 1073 (D. Ore. Nov. 6, 1984)...............................................................................20

United States v. Wong Kim Bo, 472 F.2d 720 (5th Cir. 1972)..............................14

Woodward Sand Co. v. Western Conference of Teamsters Pension Trust Fund, 789 F.2d 691 (9th Cir. 1986)........................................................................20

## STATUTES AND REGULATIONS

9 U.S.C. § 6.........................................................................................................13

28 U.S.C. § 1291...................................................................................................1

28 U.S.C. § 1331...................................................................................................1

29 U.S.C. § 1002...................................................................................................5

29 U.S.C. § 1301.............................................................................................. 5, 6

29 U.S.C. § 1381...................................................................................................3

29 U.S.C. § 1382...................................................................................................2

29 U.S.C. § 1401........................................................................................... passim

29 U.S.C. § 1451........................................................................................... passim

## COURT RULES

Fed. R. Civ. P. 2................................................................................................12

Fed. R. Civ. P. 3................................................................................................12

Fed. R. Civ. P. 8................................................................................................26

Fed. R. Civ. P. 12.......................................................................................4, 5, 7, 9

Fed. R. Civ. P. 15......................................................................................8, 22, 23

Fed. R. Civ. P. 56................................................................................24

**OTHER AUTHORITIES**

Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>
§ 1182 (3d ed. 2004)...........................................................................23

# JURISDICTIONAL STATEMENT

**1.      Subject-Matter Jurisdiction in the District Court.**

Appellant, Freight Drivers and Helpers Local Union No. 557 Pension Fund, by its Plan Sponsor, the Joint Board of Trustees ("Pension Fund"), brought the action that is the subject of this appeal under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1453.[1]  Joint Appendix ("JA") 7.  (In its original pleading, the Pension Fund identified a single Trustee— rather than its Joint Board of Trustees—as the plaintiff through which the Pension Fund acted.  JA 6.  Through an amended pleading, the Pension Fund corrected the name of the plaintiff to indicate the action was brought by "Freight Drivers and Helpers Local Union No. 557 Pension Fund, through its Plan Sponsor, the Board of Trustees."  JA 96, 98.)  The Pension Fund invoked jurisdiction in the district court under 28 U.S.C. § 1331 and 29 U.S.C. §§ 1401(b) and 1451.  JA 7.

**2.      Appellate Jurisdiction.**

This Court has jurisdiction over appeals from all final decisions of the district courts of the United States pursuant to 28 U.S.C. § 1291.  The district court's order dated February 7, 2014, JA 118, was a final decision in the underlying action.  Therefore, appellate jurisdiction over this matter exists under 28 U.S.C. § 1291.

---

[1] MPPAA amended the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.

## STATEMENT OF ISSUES

I.    WHETHER THE PENSION FUND PROPERLY
      BROUGHT AN ACTION TO VACATE OR MODIFY
      AN ARBITRATOR'S AWARD UNDER 29 U.S.C. §
      1401(b) BY FILING A COMPLAINT.

II.   WHETHER THE PENSION FUND'S AMENDED
      COMPLAINT PROPERLY RELATED BACK TO
      THE FILING DATE OF THE COMPLAINT.

III.  ASSUMING, ARGUENDO, THE PENSION FUND
      MUST HAVE BROUGHT THE UNDERLYING
      ACTION BY MOTION RATHER THAN
      COMPLAINT, WHETHER EQUITABLE
      CONSIDERATIONS REQUIRE THAT THE
      DISTRICT COURT ADDRESS THE MERITS OF
      THE PENSION FUND'S ACTION TO VACATE
      OR MODIFY THE ARBITRATOR'S AWARD.

## STATEMENT OF CASE

This action arises out of an arbitrator's award issued on July 13, 2012 (the

"Award"), see JA 14-55, pursuant to MPPAA.  Prior to the Award, the Pension

Fund had, pursuant to MPPAA, made two assessments of partial withdrawal

liability, and one assessment of complete withdrawal liability, against Penske

Logistics LLC and Penske Truck Leasing Co., L.P. (together, "Penske").  See JA

14.  See also 29 U.S.C. § 1382 (when employer withdraws from multiemployer

pension plan, plan sponsor determines amount of liability, notifies employer of

amount, and collects amount from employer).  Penske, in response, challenged

those assessments in arbitration.  See 29 U.S.C. § 1381(a) (providing for arbitration of disputes concerning, inter alia, plan's assessment of withdrawal liability against employer).[2]  In the Award, the arbitrator made numerous rulings; among them, he determined that the Pension Fund's notice of assessment of complete withdrawal liability against Penske failed as a matter of law, and granted Penske's motion to dismiss that notice of assessment.  See JA 49-55.

On August 9, 2012, twenty-seven days after the issuance of the Award, the Pension Fund, pursuant to 29 U.S.C. § 1401(b), brought the underlying action in the district court to vacate and/or modify certain rulings in the Award.  JA 6-13.[3]

---

[2] See generally Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. CPC Logistics, Inc., 698 F.3d 346, 347-350 (7th Cir. 2012) (summarizing history of MPPAA and mechanics for resolving withdrawal liability disputes).

[3] The Award contained the arbitrator's "Phase One Rulings."  See JA 31.  As is evident from the Award, these rulings did not finally resolve all disputed issues surrounding the two partial withdrawal liability assessments, and arguably did not resolve all disputed issues concerning the complete withdrawal liability assessment.  Concerned, however, that the arbitrator's dismissal of the Pension Fund's notice of assessment of complete withdrawal liability against Penske might trigger the start of the limitations period within which to bring an action to vacate or modify that portion of the arbitrator's award, the Pension Fund, in an abundance of caution, initiated the underlying action in the district court.  (Under 29 U.S.C. § 1401(b)(2), "[u]pon completion of the arbitration proceedings in favor of one of the parties, any party thereto may bring an action, no later than 30 days after the issuance of an arbitrator's award, … to enforce, vacate, or modify the arbitrator's award.")

3

The Pension Fund initiated the action via Complaint, identifying the plaintiff as "Freight Drivers and Helpers Local Union No. 557 Pension Fund, by its Trustee, William Alexander." JA 6.

On September 24, 2012, Penske filed an Answer to the Complaint. JA 56-71. Also on September 24, Penske filed a "Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction." See JA 3 at dkt5.[4] Specifically, Penske asserted the following:

> Plaintiff lacks standing to bring this action [to vacate, modify or enforce an arbitrator's award under MPPAA] and this Court is without subject matter jurisdiction over this action because only a plan sponsor can bring this action and Plaintiff [Pension Fund Trustee William Alexander] is not the Fund's plan sponsor and does not allege to be authorized to bring this action on behalf of the Fund's plan sponsor.

JA 70.

Through a Memorandum Opinion and accompanying Order dated July 25, 2013, the district court granted Penske's motion to dismiss. JA 94, 95. The district

---

[4] The district court docket sheet identifies the motion as a "Motion to Dismiss for Lack of Jurisdiction"; however, the motion's full title is "Penske's Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction." Neither the motion nor its accompanying memorandum in support are included in the Joint Appendix, but they are nonetheless proper for review by this Court. See Fed. R. App. 30(a)(2) ("Memoranda of Law in the district court should not be included in the appendix unless they have independent relevance. Parts of the record may be relied upon by the court or the parties even though not included in the appendix.").

court, however, did not grant Penske's motion under Fed. R. Civ. P. 12(b)(1).

Instead, the district court determined that it had subject matter jurisdiction over the

action; that it would treat the Rule 12(b)(1) motion as a motion to dismiss for

failure to state a claim under Rule 12(b)(6); and that Trustee Alexander lacked

"statutory standing to bring this suit under 29 U.S.C. § 1401(b)(2)."  JA 79-80, 94.

Regarding the final aspect of the ruling, the district court wrote:

> [O]nly a "plan sponsor," defined as a plan's joint board
> of trustees,[5] has statutory standing in this case.  But, the
> Fund's Board of Trustees did not file this suit, and there
> is no evidence that the Board delegated authority to
> Trustee Alexander to file suit on the Fund's behalf.
> Accordingly, plaintiff lacks statutory standing.

JA 83.

In dismissing the Complaint, the district court not only did so without

prejudice, but went further, writing in its Memorandum Opinion:

> For the foregoing reasons, I will grant defendants'
> Motion to Dismiss, without prejudice and with leave to
> amend.  Specifically, plaintiff may amend the Complaint
> provided that the Board of Trustees files suit on behalf of
> the Fund.  Alternatively, if the Board authorizes Trustee
> Alexander to act on its behalf, then plaintiff may amend

---

[5] See 29 U.S.C. § 1002(16)(B)(iii) (defining "plan sponsor" with respect to multiemployer employee benefit plan as the "joint board of trustees … who establish or maintain the plan"); 29 U.S.C. § 1301(a)(10)(A) (providing virtually identical definition of "plan sponsor").

the Complaint accordingly.

JA 94.[6]

In response to the Court's Memorandum Opinion and Order, on August 7, 2013, the Fund filed an Amended Complaint.  JA 96-103.  Following the district court's instruction, the Amended Complaint corrected the name of the Plaintiff, from "Freight Drivers and Helpers Local Union No. 557 Pension Fund, by its Trustee, William Alexander," to "Freight Drivers and Helpers Local Union No. 557 Pension Fund, by its Plan Sponsor, The Joint Board of Trustees."  Compare JA 6 with JA 96.  In addition, the Amended Complaint contained two allegations that were absent from the Complaint, as follows:

> Pursuant to Section 4001(a)(10) of ERISA, 29 U.S.C. § 1301(a)(10), the Fund's plan sponsor is its Joint Board of Trustees.  The Fund's Joint Board of Trustees is made up of Union Trustees William Alexander and Mark Garey, and Employer Trustees Gary Caldwell and Tom Ventura.

JA 98 at ¶ 4.  Aside from these changes, the Amended Complaint was identical to the Complaint.

---

[6] Similarly, in the district court's accompanying order, it wrote in relevant part:

> Defendants' Motion to Dismiss (ECF 5) is GRANTED, without prejudice, and with leave to amend within 21 days of the docketing of this Order.

JA 95.

In response to the Amended Complaint, on August 26, 2013, Penske filed, pursuant to Fed. R. Civ. P. 12(b)(6), a "Motion to Dismiss or, in the Alternative, Opposition to 'Amended Complaint' Pursuant to Local Rule 105." See JA 4 at dkt16.

On February 7, 2014, the district court issued a Memorandum Opinion and accompanying Order, through which it held that, notwithstanding its specific ruling permitting the Fund to "amend the Complaint provided that the Board of Trustees files suit on behalf of the Fund," JA 94, the Amended Complaint was procedurally improper; the exclusive means through which to seek vacatur of a MPPAA-governed arbitrator's award was via motion. See JA 114 ("I conclude that a party to an arbitration action under the MPPAA must file a motion, rather than a complaint, to challenge the arbitrator's award.") and 115 (" … I conclude that the proper method by which to challenge an arbitrator's award under the MPPAA is by filing a motion … rather than by filing a complaint.").

In addition, concerning the timeliness of the Fund's institution of the action, the district court ruled:

> Plaintiff's "Amended Complaint" is procedurally improper. But, even if construed as a motion to vacate, it is untimely, …. I will construe the "Amended Complaint" as a motion to vacate, and I will deny the

7

motion, with prejudice.

JA 117.  Thereafter, the Fund moved for reconsideration of the district court's February 7, 2014, decision.  See JA 4 at dkt22.  The district court denied the motion, ruling, in essence, that the Complaint was procedurally improper (i.e., it should have been a motion), that the Amended Complaint too should have been a motion, and that, properly construed to be a motion, there is no relation back of motions under Fed. R. Civ. P. 15(c).  JA 123.  This appeal followed.

## SUMMARY OF ARGUMENT

Following Penske's initial motion to dismiss, the district court rejected Penske's assertion that the court lacked subject matter jurisdiction over the underlying matter, ruling instead that the Complaint was technically flawed because it identified the action as having been brought by a single Pension Fund Trustee rather than the full, four-member Board of Trustees.  The district court having explicitly granted the Pension Fund permission to amend the Complaint, the Pension Fund followed the court's instruction to the letter—curing the technical defect through the Amended Complaint.  Nearly seven months later, and with no prior mention in its 23-page Memorandum Opinion of the complaint-versus-motion issue, the district ruled that the Amended Complaint—the very pleading it counseled that the Pension Fund should file—was both defective and untimely.

8

The district court's late-in-the-day ruling, that the Complaint (and the Amended Complaint) must have been styled as a motion, and that, construed as such, was untimely because motions cannot, as a matter of law, relate back for limitations purposes, was erroneous. As shown below, the district court's decision ran afoul of a proper interpretation of 29 U.S.C. §§ 1401(b) and 1451, as revealed both by a natural reading of those provisions and by how numerous courts and parties have apparently interpreted those statutes. The district court's decision, further, contradicted its own instruction in its July 25, 2013, Memorandum Opinion. Finally, equitable considerations mandate a finding that, by instituting the underlying action via complaint rather than motion—even if this Court should find such action to be flawed—the Pension Fund's filing caused Penske no prejudice, due process deprivation, undue burden, or procedural unfairness in defending the action, and therefore the district court should have reached the merits of the Pension Fund's claim.

## ARGUMENT

### STANDARD OF REVIEW

This Court reviews de novo a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). <u>E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.</u>, 637 F.3d 435, 440 (4th Cir. 2011).

I.      THE PENSION FUND PROPERLY BROUGHT
        AN ACTION TO VACATE OR MODIFY AN
        ARBITRATOR'S AWARD UNDER 29
        <u>U.S.C. § 1401(b) BY FILING A COMPLAINT.</u>

        A.      The Federal Arbitration Act's Requirement
                That Any Application to a Court Be Made
                By Motion is Inconsistent with ERISA,
                and Therefore Inapplicable to an
                <u>Action Brought Under Section 1401(b).</u>

29 U.S.C. § 1401 governs the resolution of disputes between an employer

and a multiemployer pension plan concerning withdrawal liability.  Such disputes,

in the first instance, must be resolved through arbitration.  29 U.S.C. § 1401(a).

Following arbitration, 29 U.S.C. § 1401(b) allows any party to challenge the

arbitrator's award in federal court.  Section 1401(b) thus provides in relevant part:

> **(b) Alternative collection proceedings; civil action
> subsequent to arbitration award; conduct of
> arbitration proceedings**
>
>            *    *    *
>
>         (2) Upon completion of the arbitration proceedings
> in favor of one of the parties, any party thereto may bring
> *an action*, no later than 30 days after the issuance of an
> arbitrator's award, in an appropriate United States district
> court *in accordance with section 1451 of this title* to
> enforce, vacate, or modify the arbitrator's award.
>
>         (3) Any arbitration proceedings under this section
> shall, to the extent consistent with this subchapter, be
> conducted in the same manner, subject to the same
> limitations, carried out with the same powers (including
> subpoena power), and enforced in United States courts as
> an arbitration proceeding carried out under title 9.

29 U.S.C. § 1401(b) (emphasis added). Thus section 1401(b)(2) expressly provides that an action to vacate, enforce or modify an arbitrator's award be brought in accordance with 29 U.S.C. § 1451. Several provisions within section 1451, which governs the filing of certain categories of civil actions under ERISA, evince that the mechanism through which to bring an action is by filing a complaint. Section 1451 provides in part:

### § 1451. Civil actions

#### (a) Persons entitled to maintain actions

(1) A plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan, or an employee organization which represents such a plan participant or beneficiary for purposes of collective bargaining, may bring *an action* for appropriate legal or equitable relief, or both.

* * *

#### (c) Jurisdiction of Federal and State courts

The district courts of the United States shall have exclusive jurisdiction of an *action* under this section without regard to the amount in controversy, except that State courts of competent jurisdiction shall have concurrent jurisdiction over an action brought by a plan fiduciary to collect withdrawal liability.

#### (d) Venue and service of process

An *action* under this section may be brought in the district where the plan is administered or where a

> defendant resides or does business, and *process* may be
> served in any district where a defendant resides, does
> business, or may be found.
>
>    *   *   *
>
> **(g) Service of *complaint* on corporation; intervention
> by corporation**
>
>   A copy of the *complaint in any action under* this
> section or *section 1401 of this title* shall be served upon
> the [Pension Benefit Guaranty] corporation by certified
> mail.  The corporation may intervene in any such action.

29 U.S.C. § 1451 (emphasis added).  Section 1451(g)'s explicit requirement that a

party serve a copy of "the complaint" on the PBGC in "any action … under section

1401" plainly reveals that a section 1401(b)-based action is properly brought by

filing a complaint.

     Indeed, while ERISA does not define the term "an action," section 1451's

title, "Civil actions," when coupled with section 1451(c)'s provision for

jurisdiction in the federal district courts, leads to the reasonable conclusion that

such actions are to be governed by the Federal Rules of Civil Procedure.  Fed. R.

Civ. P. 2 succinctly provides:  "There is one form of action—the civil action."

Relatedly (and similarly brief), Fed. R. Civ. P. 3 provides:  "A civil action is

commenced by filing a complaint with the court."  Thus, the Pension Fund

properly brought the underlying action to vacate or modify the arbitrator's award

via complaint rather than motion.

Notwithstanding the above, in its February 7, 2014, Memorandum Opinion the district court, relying on section 1401(b)(3), rejected the Pension Fund's argument, holding that it must have brought the underlying action via motion. This was so, the district court said, because section 1401(b)(3) states that arbitration proceedings under the subsection are to be enforced as an arbitration proceeding carried out under title 9 of the U.S. Code (the Federal Arbitration Act, "FAA"), which are initiated by motion.[7] Yet section 1401(b)(3) mandates that MPPAA-governed proceedings follow the procedures of the FAA "only to the extent consistent with [MPPAA]." As shown above, the mechanism for bringing an action in accordance with section 1451, which section 1401(b)(2) explicitly requires, is not consistent with the FAA. The FAA's provision must therefore give

---

[7] The FAA provides:

> Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided.

9 U.S.C. § 6.

way; the district court's conclusion otherwise was erroneous.[8]

Finally, on its face section 1401(b)(3) addresses only actions to enforce MPPAA-governed arbitration awards, not actions to vacate or modify them. "Any arbitration proceedings under this section shall … be … *enforced* in the United States courts as an arbitration proceeding carried out under title 9." 29 U.S.C. § 1401(b)(3) (emphasis added). The language in section 1401(b)(3), regarding arbitration proceedings and enforcement, can be contrasted with that in section 1401(b)(2), which applies to actions to "enforce, vacate, or modify the arbitrator's award." It stands to reason that, had Congress intended that actions to vacate or modify arbitration awards follow the procedures set out in section 1401(b)(3), it would have included those terms in the subsection. See United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972) (where Congress includes particular language in one section of statute but omits it in another section of same Act,

---

[8] Courts, including this Court, have not hesitated to find FAA provisions inapplicable to a MPPAA-governed arbitration when such provisions are inconsistent with those of MPPAA. See, e.g., Trustees of Central Pension Fund of International Union of Operating Engineers and Participating Employers v. Wolf Crane Service, Inc., 374 F.3d 1035, 1038-1039 (11th Cir. 2004) (rejecting FAA's deferential standard of review of arbitrator's award as inconsistent with standard of review established by MPPAA); Trustees of Iron Workers Local 473 Pension Trust v. Allied Products Corp., 872 F.2d 208, 212 (7th Cir. 1989), cert. denied, 493 U.S. 847 (1989) (same); Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Va. Pension Fund, 718 F.2d 628, 641 (4th Cir. 1983), cert. denied, 467 U.S. 1259 (1984) (without expressly elaborating on fullness of judicial review of arbitrator's legal rulings, Court rejected FAA's deferential standard, holding that section 1401(b)(2) prevails and provides "effective judicial review of ... legal rulings").

14

general presumption Congress acts intentionally and purposefully in disparate

inclusion and exclusion).

> B.    Courts Presiding Over, and Parties to, Actions to
>        Vacate, Modify or Enforce an Arbitrator's Award
>        Under MPPAA Are in Apparent Accord With
>        the Pension Fund's Reading of Section 1401(b).

Aside from the district court's ruling, that an action to vacate, modify or

enforce an arbitrator's award under MPPAA must be brought by motion, the

Pension Fund is aware of only one other court that has directly addressed the issue.

In that case, Bright Construction, Inc. v. Carpenters District Council of Kansas

City Pension Fund, 2013 WL 1741984 (W.D. Mo. Apr. 23, 2013), Bright, party to

a MPPAA-governed arbitration, filed a "Motion to Vacate or Modify Arbitration

Award"; however, a review of the "motion" revealed it to be, in substance, a

complaint.  Bright Construction, 2013 WL 1741984, at *1.  The District Court for

the Western District of Missouri, citing to non-MPPAA cases where only the FAA

was applicable, ruled that Bright should have brought the action by motion,

including therein the reasoning and authorities in support of its position.  Id. at *1-

2.

For the reasons detailed hereinabove at pages 10-14, the district court in the

instant matter, as well as the district court in Bright, misinterpreted the applicable

provisions of MPPAA.  Indeed, the Pension Fund's reading of section 1401(b)(2)

and (b)(3), in conjunction with both section 1451 and the Federal Rules of Civil

Procedure, is supported by and in accord with the apparent views of numerous courts and parties that have been involved in such actions.  In each of the following cases, a review of the court opinion itself or, where not evident from the opinion, the court docket sheet, reveals that the plaintiff initiated the action to vacate, modify or enforce an arbitrator's award issued under MPPAA via complaint, not motion.  In none of the below-cited cases did the opposing party or the district court (or, if appealed, the court of appeals) argue or rule that such method of proceeding ran afoul of section 1401(b)[9]:

(1)     Oregon-Washington Carpenters-Employers Pension Trust Fund v. BQC Construction, Inc. Hardware Service, 485 F. Supp. 2d 1206 (D. Ore. 2007) (complaint, answer, dispositive motions);

(2)     Roofers Local No. 30 Combined Pension Fund v. D.A. Nolt, Inc., 719 F. Supp. 2d 530 (E.D. Pa. 2010), aff'd, 444 Fed. App'x 571 (3d Cir. 2011) (complaint, answer, cross-motions for summary judgment);

(3)     Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. CPC Logistics, Inc., 2011 WL 3471087 (N.D. Ill. Aug. 8, 2011), aff'd, 698 F.3d 346 (7th Cir. 2012) (complaint, answer and counterclaim, answer to counterclaim, dispositive motions);

---

[9] In the cases numbered 1 through 13, the docket sheet revealed how the matter proceeded.  In cases numbered 14 through 22, the procedure became evident from the court's opinion itself.

(4)    CenTra, Inc. v. Central States, Southeast & Southwest Areas Pension Fund, 585 F. Supp. 2d 1017 (N.D. Ill. 2008), aff'd, 578 F.3d 592 (7th Cir. 2009), cert. denied, 559 U.S. 1006 (2010) (complaint, answer to complaint and counterclaim, amended complaint, answer to amended complaint, amended counterclaim, dispositive motions);

(5)    HOP Energy, LLC v. Local 553 Pension Fund, 2010 WL 3398475 (S.D.N.Y. Aug. 26, 2010), aff'd, 678 F.3d 158 (2d Cir. 2012) (complaint, answer, cross-motions to vacate or confirm award);

(6)    Central States, Southeast & Southwest Areas Pension Fund v. Hunt Truck Lines, Inc., 43 F. Supp. 2d 942 (N.D. Ill. 1999), aff'd, 204 F.3d 736 (7th Cir. 2000) (complaint, answer to complaint and counterclaim, answer to counterclaim, motions for summary judgment);

(7)    Northern New England Carpenters Pension Plan and Trust v. H.P. Cummings Construction Co., 2003 WL 1856440 (D. Me. Apr. 10, 2003) (complaint, answer to complaint and counterclaim, briefs in support of and in opposition to action to vacate);

(8)    CIC-TOC Pension Plan v. Weyerhaeuser Co., 911 F. Supp. 2d 1088 (D. Ore. 2012) (complaint, answer, briefs in support of enforcement and vacatur);

(9)    Teamsters Pension Trust Fund of Philadelphia and Vicinity v. Fuqua Industries, Inc., 1992 WL 70418 (E.D. Pa. Mar. 31, 1992), aff'd, 981 F.2d

1248 (3d Cir. 1992), <u>vacated on other grounds</u>, 509 U.S. 901 (1993) (complaint, answer, summary judgment motions);

(10)    <u>Crown Cork and Seal Co., Inc. v. Central States, Southeast & Southwest Areas Pension Fund</u>, 1992 WL 70343 (E.D. Pa. Mar. 31, 1992), <u>aff'd</u>, 982 F.2d 857 (3d Cir. 1992), <u>cert. denied</u>, 508 U.S. 972 (1993) (complaint, answer, summary judgment motion);

(11)    <u>RXDC, Inc. v. Oil, Chemical and Atomic Workers Union-Industry Pension Fund</u>, 781 F. Supp. 1516 (D. Colo. 1992) (complaint, cross-motions for summary judgment);

(12)    <u>Trustees of Central Pension Fund of International Union of Operating Engineers and Participating Employers v. Wolf Crane Service, Inc.</u>, Case No. 97-06195 (S.D. Fla. Apr. 13, 1999), <u>vacated on other grounds</u>, 374 F.3d 1035 (11th Cir. 2004) (complaint, answer, counterclaim, answer to counterclaim, motion to vacate award);

(13)    <u>Central States, Southeast & Southwest Areas Pension Fund v. Safeway, Inc.</u>, 1999 WL 787599 (N.D. Ill. Sept. 29, 1999), <u>aff'd</u>, 229 F.3d 605 (7th Cir. 2000) (complaint, answer to complaint and counterclaim, answer to counterclaim, cross-motions for summary judgment);

(14)    <u>Parmac, Inc. v. I.A.M. National Pension Fund Benefit Plan A</u>, 872 F.2d 1069, 1071 (D.C. Cir. 1989) (employer commenced action to vacate

arbitrator's award; plan "moved for partial summary judgment dismissing the complaint"; employer cross-moved for partial summary judgment);

(15)   Iron Workers Local 473 Pension Trust v. Allied Products Corp., 8 Empl. Benefits Cas. (BNA) 1959, 1962 (N.D. Ill. Dec. 8, 1986) ("Trustees filed this complaint in federal court to vacate the arbitrator's award"; matter decided on cross-motions for summary judgment), rev'd on other grounds, 872 F.2d 208 (7th Cir. 1989), cert. denied, 493 U.S. 847 (1989);

(16)   Amalgamated Insurance Fund Trustees v. Sheldon Hall Clothing, Inc., 683 F. Supp. 986, 989 (E.D. Pa. 1988) (trustees initiated action to enforce arbitrator's award by complaint, followed by answer by employer claiming complaint filed untimely; no claim or court ruling action must have been initiated by motion), aff'd, 862 F.2d 1020 (3d Cir. 1988), cert. denied, 490 U.S. 1082 (1989);

(17)   Central States, Southeast & Southwest Areas Pension Fund v. Georgia-Pacific LLC, 2010 WL 431674, at *3 (N.D. Ill. Feb. 2, 2010) ("Central States brought suit in this court under ERISA § 4221(b) (2), 29 U.S.C. § 1401(b)(2), which, in accordance with ERISA § 4301, 29 U.S.C. § 1451, gives district courts the power to review an arbitrator's award.  Georgia-Pacific answered, and now both sides have filed motions."), aff'd, 639 F.3d 757 (7th Cir. 2011);

19

(18)  <u>Trustees of Western Council LPIW-Timber Operators Pension Fund v.</u>

   <u>American Maid Products Corp.</u>, 6 Empl. Benefits Cas. (BNA) 1073 (D. Ore.

   Nov. 6, 1984) (when employer failed to make payments in accordance with

   arbitrator's award, fund "filed a complaint in this court pursuant to 29

   U.S.C. § 1401(b)(2)" to enforce award);

(19)  <u>Woodward Sand Co. v. Western Conference of Teamsters Pension Trust</u>

   <u>Fund</u>, 789 F.2d 691, 693 (9th Cir. 1986) (employer sought order in district

   court vacating arbitrator's award; fund counterclaimed seeking enforcement

   of award; matter before district court on cross-motions for summary

   judgment);

(20)  <u>Sherwin-Williams Co. v. New York State Teamsters Conference Pension</u>

   <u>and Retirement Fund</u>, 969 F. Supp. 465, 470 (N.D. Ohio 1997) (employer

   filed complaint to partially vacate and partially enforce arbitrator's award

   followed by summary judgment motion; fund filed motion to dismiss

   complaint and counterclaim to partially enforce and partially vacate award),

   <u>aff'd</u>, 158 F.3d 387 (6th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1017 (1999);

(21)  <u>Chicago Truck Drivers, Helpers and Warehouse Workers Union</u>

   <u>(Independent) Pension Fund v.  Louis Zahn Drug Co.</u>, 890 F.2d 1405, 1408

   (7th Cir. 1989) ("Pursuant to 29 U.S.C. Sec. 1401(b)(2), the Fund filed an

action in district court to vacate the arbitrator's award.  Zahn, in answering

the Fund's complaint, moved for summary judgment.");

(22)  <u>Michigan United Food and Commercial Workers Unions and Food</u>

<u>Employers Joint Pension Fund v. Eberhard Foods, Inc.</u>, 831 F.2d 1258, 1260

(6th Cir. 1987) ("The trustees filed a complaint in the District Court seeking

enforcement of the arbitrator's award, and Eberhard counterclaimed seeking

to vacate or modify the award. … The District Court granted the trustees'

motion for summary judgment[.]").[10]

The reasonable conclusion to be drawn from the legion of cases cited

immediately above is that a plaintiff may properly bring an action under section

1401(b) via complaint, as the Pension Fund did here.  This Court should so find.

---

[10] These twenty-two cases represent the results of the Pension Fund's reasonably
exhaustive research efforts.  In performing the research, other than <u>Bright
Construction</u>, the Pension Fund uncovered not a single case wherein a plaintiff
brought the action by motion.

II.    THE PENSION FUND'S AMENDED COMPLAINT
       RELATED BACK TO THE FILING DATE OF THE
       COMPLAINT.

The Pension Fund's Complaint, filed twenty-seven days after the issuance of

the Award, constituted a timely filed action to vacate the Award.  See 29 U.S.C. §

1401(b)(2) (permitting party to MPPAA arbitration proceeding to "bring an action"

no later than thirty days after issuance of arbitrator's award).  As argued above,

this Court should rule that the Pension Fund properly brought the underlying action

by filing its Complaint.  Presuming the Court so rules, there is little question that

under Fed. R. Civ. P. 15(c), the Amended Complaint—which cured the standing

defect the district court found evident on the face of the Complaint—related back

to the filing date of the Complaint.

Rule 15(c) provides in part:

> An amendment to a pleading relates back to the date of
> the original pleading when: … the amendment asserts a
> claim or defense that arose out of the conduct,
> transaction, or occurrence set out—or attempted to be set
> out—in the original pleading ….

Fed. R. Civ. P. 15(c)(1)(B).  The Amended Complaint asserted precisely the same

claim—arising out of the same occurrence (i.e., the arbitrator's award)—as that set

out in the Complaint.  The only change from the Complaint to the Amended

Complaint was to more precisely identify the plaintiff.[11]  The Amended Complaint

falls squarely within the grounds for relation back under Rule 15(c)(1)(B).  This

Court should so find.

> III.  ASSUMING, <u>ARGUENDO</u>, THE PENSION FUND
>        MUST HAVE BROUGHT THE UNDERLYING ACTION
>        BY MOTION RATHER THAN COMPLAINT, EQUITABLE
>        CONSIDERATIONS REQUIRE THAT THE DISTRICT
>        COURT ADDRESS THE MERITS OF THE PENSION
>        FUND'S ACTION TO VACATE OR MODIFY THE
>        <u>ARBITRATOR'S AWARD.</u>

Assuming, <u>arguendo</u>, that the exclusive method by which a party may seek

to vacate, modify or enforce a MPPAA-governed arbitrator's award in court is

through the filing of a motion, under the facts of this case equitable considerations

mandate that the district court proceed to conduct judicial review of the Award.

"[T]he function of a pleading in federal practice is to inform the opposing

party and the court of the nature of the claims and defenses being asserted by the

pleader and, in case of an affirmative pleading, the relief being demanded."  5

Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1182 (3d

---

[11] Penske proceeded to argue in the district court a hyper-technical point that bears
no relation to the effective or substantive realities of MPPAA arbitration
proceedings.  While MPPAA speaks in terms of actions by a multiemployer plan's
"plan sponsor" (which, as noted above, is defined in the law as the plan's board of
trustees), in actuality parties to such proceedings commonly refer to the plan
sponsor/board of trustees simply as "the Plan" or "the Fund."  Such was the case
here.  Thus, in the arbitrator's 42-page award, not once did he refer to "plan
sponsor," "joint board of trustees" or "board of trustees" as the party.  Rather he
repeatedly identified the Pension Fund (as a party to the arbitration) by the name of
the full name of the Pension Fund, "the Fund," or "the Trustees."  <u>See</u> JA 14-55.

ed. 2004).  These purposes were fulfilled by the Pension Fund's August 7, 2012,

Complaint.  The Complaint was timely filed, and it identified the precise nature of

the action and the specific relief sought.  In effect, the sole difference between

filing the action by complaint and by motion was a single additional, wholly

technical, step:  the filing and service of the Complaint.

Virtually no delay would result from filing the action as a complaint rather

than a motion, since the Pension Fund could set forth the grounds for vacating the

arbitrator's award immediately following service of the complaint, through a

motion for summary judgment.  See Fed. R. Civ. P. 56(b) (unless different time set

by local rule or court, party may file motion for summary judgment "at any time"

until 30 days after close of discovery); see also Charvat v. ACO, Inc., 2012 WL

847328, at *4 (D. Neb. Mar. 13, 2012) (defendant permitted to file motion for

summary judgment in lieu of responsive pleading or motion); Taylor v. Lantagne,

2012 WL 256170, at *2 (W.D. Mich. Jan. 27, 2012), vacated on other grounds, 541

Fed. App'x 539 (6th Cir. 2013) (same).  Indeed, such a quick filing would be

especially appropriate in a case such as the instant matter, where the entire record

before the district court would consist of the Award, and therefore no discovery

would be necessary.  Thus, the only "delay" resulting from initiating the

underlying action by way of complaint instead of motion would amount to the time

between the filing of the complaint and service of same on Penske.[12]  That the

Pension Fund should be ushered from the race before leaving the starting gate, i.e.,

that it be foreclosed from presenting its case on the merits merely because the

action was initiated by means of a timely-filed complaint rather than a motion,

elevates the concept of form over substance to an absurd level.

    To be sure, this Court has cautioned against the very action the district court

engaged in below.  Finding that the moving party—notably, in a *non*-MPPAA-

governed arbitration—had erroneously initiated an action to vacate under the FAA

by way of complaint, the Court, in <u>ANR Coal Co., Inc. v. Cogentrix of North</u>

---

[12] The district court's concern about the Pension Fund thwarting Congress's intent in enacting MPPAA—to provide a streamlined process by which to resolve withdrawal liability disputes—by filing a complaint following an adverse arbitrator's decision and thus, "start[ing] anew," JA 115, was misplaced.  Whether the action is initiated via motion or complaint, the standards of review of an arbitrator's decision are the same:  "clear error" for findings of fact, and de novo for conclusions of law.  <u>See</u> <u>Wolf Crane Service</u>, 374 F.3d at 1039; <u>Bowers v. Andrew Weir Shipping, Ltd.</u>, 27 F.3d 800, 804-805 (2d Cir. 1994), <u>cert.</u> <u>denied</u>, 513 U.S. 1000 (1994).

    Indeed, by filing an action to vacate via complaint rather than motion, there could be no "relitigation of the issues," as the district court suggested, JA 115, because a reviewing court would be called upon simply to apply the appropriate standards of review to a completed evidentiary record, i.e., the arbitrator's award. In this way, notably, the Amended Complaint alleges no fraud, corruption or collusion by the arbitrator, nor any factual error on his part; it alleges only errors of law.  <u>See</u> JA 11-12.  Accordingly, no discovery could conceivably be required, and the process could "streamline," as this Court indicated was Congress's intent, <u>see</u> <u>Board of Trustees, Sheet Metal Workers' National Pension Fund v. BES Services, Inc.</u>, 469 F.3d 369, 374 (4th Cir. 2006), finding resolution through the filing of cross-motions for summary judgment.

Carolina, Inc., 173 F.3d 493 (4th Cir. 1999), cert. denied, 528 U.S. 877 (1999),

nevertheless ruled that the matter should be heard on the merits, stating:

> ANR clearly erred by labeling its pleading a civil complaint, rather than a motion to vacate. Cogentrix, however, cannot point to any prejudice resulting from this error. No court has held that this sort of mistake forfeits a party's *right to judicial review* when the opposing party fails to demonstrate any prejudice. See, e.g., [O.R. Securities, Inc. v. Professional Planning Associates, Inc., 857 F.2d 742, 745 (11th Cir. 1988)] ("The liberality of the ... Federal Rules is such that an erroneous nomenclature does not prevent the court from recognizing the true nature of a motion.") (internal quotation marks and citation omitted). We will not so hold here. Such a ruling would, as the magistrate judge observed, undeniably "elevate form over substance."

ANR Coal, 173 F.3d at 496 n.1 (emphasis added).[13]

Absent from both Penske's second motion to dismiss memorandum, JA 4 at

dkt16, and its related reply brief, JA 4 at dkt18, was any claim of prejudice to it as

the result of this action having been brought via complaint rather than motion.

---

[13] The Supreme Court has taken a similar approach as this Court. Rejecting the approach that form triumph over substance at the expense of a denial of justice, the Court, interpreting the federal rules of pleading, long ago wrote:

> The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

Conley v. Gibson, 355 U.S. 41, 48 (1957), abrogated on other grounds by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Cf. Fed. R. Civ. P. 8(e) (requiring courts to construe pleadings "so as to do justice").

26

Penske knew precisely the nature of the instant action, the proceedings that spawned the action, and the parties involved, via the Pension Fund's August 9, 2012-filed Complaint, which was served on Penske on September 4, 2012. See JA 3 at dkt4. Under such circumstances, and with no resultant prejudice to Penske by the Fund having initiated this action by way of complaint, the Court should require the district court to conduct judicial review of the Award.[14]

## CONCLUSION

For the foregoing reasons, this Court should vacate the February 7, 2014, decision of the district court, and remand the matter to that court with instructions to issue a briefing schedule so as to permit the Pension Fund to supply that court with the reasoning and authorities in support of its action to vacate or modify the Award.

---

[14] Interestingly, the court in Bright Construction, a case the district court relied upon in ruling the Pension Fund must have brought the action by motion, see JA 114, permitted the parties to submit argument notwithstanding that the plaintiff had not done so in its initial filing. While ruling that Bright should have initiated the action through traditional motions practice—including supporting its motion with reasoning, authorities and legal argument—rather than via notice pleading, the court nonetheless ordered, inter alia, the following: "Motion to Vacate or Modify Arbitration Award (Doc. No. 1) is provisionally denied pending *briefing completion*." Bright Construction, 2013 WL 1741984 at *3 (emphasis added).

27

Respectfully submitted,

Dated:  June 23, 2014

/s/_____
Paul D. Starr, Bar No. 024789

/s/_____
Corey Smith Bott, Bar No. 25673
Abato, Rubenstein and Abato, P.A.
809 Gleneagles Court, Suite 320
Baltimore, Maryland  21286
(410) 321-0990
(410) 321-1419 – fax

Attorneys for Appellant
Freight Drivers and Helpers Local Union
No. 557 Pension Fund, by its Plan Sponsor,
the Joint Board of Trustees

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

1.    This principal brief complies with the page limitation of Fed. R. App.

P. 32(a)(7)(A) because it does not exceed 30 pages in length.

2.    This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has

been prepared in a proportionally spaced typeface using Microsoft Word 2010 and

14-point Times New Roman type style.


Dated:  June 23, 2014                    /s/_____
                                          Paul D. Starr

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of June, 2014, a copy of the

foregoing was served, via the Court's CM/ECF system, on the following:

> Brian A. Coleman, Esquire
> David R. Levin, Esquire
> Drinker Biddle & Reath LLP
> 1500 K Street, N.W., Suite 1100
> Washington, D.C.  20005-1209
>
> Mark E. Furlane, Esquire
> Drinker Biddle & Reath LLP
> 191 North Wacker Drive, Suite 3700
> Chicago, Illinois 60606-1698
>
> Attorneys for Appellees

/s/_____
Paul D. Starr

# ADDENDUM

**Contents**

(1)    <u>Iron Workers Local 473 Pension Trust v. Allied Products Corp.</u>, 8 Empl.
        Benefits Cas. (BNA) 1959 (N.D. Ill. Dec. 8, 1986)

(2)    <u>Trustees of Western Council LPIW-Timber Operators Pension Fund v.
        American Maid Products Corp.</u>, 6 Empl. Benefits Cas. (BNA) 1073
        (D. Ore. Nov. 6, 1984)

Iron Workers Local 473 Pension Trust v. Allied Products Corp.    8 EBC 1959

no claim that the use of collateral estoppel is otherwise unfair to them. Therefore, the court, in the exercise of its discretion, concludes that plaintiffs may employ offensive collateral estoppel against Continental with respect to *Gavalik*.[17]

### CONCLUSION

Because the Third Circuit's opinion in *Gavalik* precludes Continental from relitigating the issues that establish its liability under §510, plaintiffs are entitled to judgment as a matter of law on their ERISA claims. Therefore, the court grants plaintiffs' motion for partial summary judgment.[18]

The court directs plaintiffs' counsel to submit a proposed order regarding the rulings contained in the court's opinion.[19] The court further directs plaintiffs' counsel to submit a separate proposed order regarding suggested

procedures for the continued litigation of plaintiffs' ERISA and RICO claims.

---

## IRON WORKERS LOCAL 473 PENSION TRUST v. ALLIED PRODUCTS CORP.

### U.S. District Court, Northern District of Illinois, Eastern Division

TRUSTEES OF IRON WORKERS LOCAL 473 PENSION TRUST v. ALLIED PRODUCTS CORPORATION, No. 84 C 5329, Dec. 8, 1986.

**ERISA — PROTECTION OF RIGHTS**

Administration and Enforcement — Standard of Court Review — In General (►40.401)

**TERMINATION INSURANCE**

Multiemployer Withdrawal Liability — Arbitration (►175.45)

[1] District court is not bound by arbitrator's legal conclusions in MPPAA arbitration involving date of employer's withdrawal, since ERISA distinguishes MPPAA arbitration from contractual arbitration under collective bargaining agreement to which courts must defer, and since it authorizes judicial review de novo of arbitrator's statutory interpretation of its withdrawal liability provisions.

**TERMINATION INSURANCE**

Multiemployer Withdrawal Liability — Withdrawal (►175.05)

[2] "Cessation of all covered operations" for MPPAA withdrawal liability purposes means virtually complete cessation of covered operations but something less than 100 percent cessation of covered operations.

**TERMINATION INSURANCE**

Multiemployer Withdrawal Liability — Withdrawal (►175.05)

[3] Multiemployer pension fund trustees correctly determined that em-

---

[17] Continental has moved for production of two documents written by plaintiffs' counsel (dated December 4, 1982 and January 19, 1983) concerning litigation strategy in *McLendon*. The court, after *in camera* review of these documents, denies Continental's motion. The court places copies of these documents under seal.

[18] Plaintiffs, in their reply brief, request that the court strike 80 affidavits submitted by Continental in opposition to this motion, as violative of Federal Rule of Civil Procedure 56(e), and that the court otherwise sanction Continental for these submissions. Continental, in its surreply brief on plaintiffs' partial summary judgment motion, addressed plaintiff's contentions. At oral argument on the partial summary judgment motion, the parties addressed the propriety of the affidavits. Therefore, though no formal motion papers were filed, the court treats plaintiffs' request in its reply brief as a motion.

According to Continental, the affidavits are addressed to the question of "whether the 'plan' was in fact implemented at any of the plants involved in the present action." Surreply in Opposition to Plaintiffs' Motion for Partial Summary Judgment, at 10. In the face of *Gavalik*'s holding that adoption of the plan, in and of itself, violates §510 of ERISA, the court finds Continental's affidavits to be irrelevant to the present motion. The court reserves as to the question of potential sanctions against Continental until the conclusion of the litigation.

[19] Therefore, the court denies Continental's motions to strike proposed orders as moot.

ployer ceased all covered operations and withdrew from fund during plan year when it ceased all normal business activity and employed only skeleton crew to perform maintenance and inventory work, since employer's later processing of seven shipment orders were minimal activities that can hardly be classified as normal activities and, therefore, do not postpone withdrawal liability.

---

On U.S. Magistrate's report and recommendation to U.S. District Court for the Northern District of Illinois, Eastern Division, in multiemployer pension fund trustees' action to vacate or modify MPPAA arbitration award and to collect withdrawal liability payments. Decision for trustees.

Charles B. Wolf, of Vedder, Price, Kaufman & Kammholz, of Chicago, Ill., attorney for trustees.

Joe A. Sutherland, of Gardner, Carton & Douglas, of Chicago, Ill., attorney for Allied Products Corp.

*Full Text of Opinion*

ROSEMOND, Magistrate.

### REPORT AND RECOMMENDATION

TO THE HONORABLE JOHN A. NORDBERG, one of the Judges of the United States District Court for the Northern District of Illinois.

This is an action to vacate or modify an arbitration award and to collect withdrawal liability payments pursuant to the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§1001-1461, which amended the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff Trustees are the administrator and named fiduciary of the Iron Workers Local 473 Pension Plan ("the Plan"), a multiemployer pension plan as defined in 25 U.S.C. §1002(37)(A). Defendant Allied Products Corporation ("Allied") is an employer within

the meaning of 25 U.S.C. §1002(5). Presently before the court are the parties' cross-motions for summary judgment. These motions center around one basic issue: when did Allied withdraw from the Plan within the meaning of the MPPAA?

### FACTS

The facts are clear and undisputed. The legal significance of those facts under applicable federal statutes is, however, hotly contested. Beginning on May 1, 1959, Allied and Shopmen's Local Union No. 473 of the International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO ("the Union") have been parties to collective bargaining agreements covering production and maintenance employees at Allied's plant in Bedford Park, Illinois. These agreements require, among other things, contributions by Allied to the Plan on the basis of specified cents per hour worked by covered employees. The Plan was most recently amended and restated as of May 1, 1979.

Under the agreement, the Pension Plan year runs from July 1 through June 30. On June 16, 1982, Allied informed the Union by letter that Allied had decided to permanently shut down and close its plant operations at Bedford Park, Illinois. Shortly thereafter, on July 2, 1982, Allied and the Union executed a Shutdown and Severance Pay Agreement which stated in part: "[t]he terms and conditions as set forth in the collective bargaining agreement . . . as amended, shall continue in full force and effect, except as hereinafter modified by this Severance Agreement, as long as any bargaining unit member remains employed."

In the Plan Year ending June 30, 1982, Allied contributed $79,669.91 for 111,573 participant hours. However, for the Plan Year ending June 30, 1983, Allied contributed only $10,338.56 for 13,854.75 participant hours; while from July 1, 1983 through December 1983, Allied's contributions were reduced by an even larger margin, $1,432.50 for 1,910 participant hours.

There were 48 employees working for Allied for the payroll week ending July 4, 1982. By the end of August 1982, only five employees remained at the plant. Of these five, two were terminated in September and two in December 1983. One employee, Donald Steele, a maintenance man, worked continuously at the Bedford Park plant and was still on the payroll at the end of December 1983. Two of the four previously terminated employees, Charles Hearod, a fork lift operator, and Lester Banks, a fitter/welder, were recalled by Allied in February 1983. Banks was terminated again in April 1983, but Hearod worked at the plant continuously from the date of his recall through December 1983.

Banks was called back to work for the purpose of welding and finishing certain heat exchangers which were pre-assembled but not finished. Hearod and Steele assisted in the finishing work as well and also worked the shear press and brake press to machine certain seal retainers in August and/or September 1983 for approximately ten hours each. In June 1983 these employees also performed 16 hours of welding on exhaust duct assembly units. All other work performed by these employees was as follows: a) cleaning and maintenance work, and b) the identification, weighing and shipment of parts, scrap, raw materials and fixtures in inventory.[1] These activities all constituted bargaining unit work.

Although Allied informed the Union in June 1982 that it had decided to permanently shut down operations at the Bedford Park plant, Allied still received, processed and filled seven purchase orders during 1983, the last one being in September 1983. In addition, since July 1, 1982, Allied identified, loaded and shipped numerous items of scrap, parts and fixtures to its other divisions.

On November 15, 1982, the Trustees of the Plan sent to Allied a notice of multiemployer plan withdrawal liability, a demand for payment of $559,108.57, and stated that the entire amount was due by January 1, 1983. Alternatively, Allied was permitted to make 27 monthly installment payments of $23,791.33 with a 28th payment of $7,495.81, beginning January 1, 1983. The amount of withdrawal liability was determined by the Trustees as of June 30, 1982 based on the Trustees' conclusion that a "complete withdrawal" had occurred during the Plan Year beginning July 1, 1982 and ending June 30, 1983.[2]

On February 14, 1983, Allied submitted a request for review pursuant to ERISA §4219(b)(2)(A), 29 U.S.C. §1399(b)(2)(A). On June 17, 1983, the Trustees responded to this request for review, concluding that the November 15, 1982 notice and demand should stand without change. Allied then initiated arbitration on August 10, 1983, seeking review of the Trustees' determination pursuant to ERISA §4219(a), 29 U.S.C. §1401(a). In arbitration, Allied challenged the Trustees' determination of withdrawal liability on two grounds. First, Allied asserted that it did not withdraw prior to July 1, 1983. Second, Allied asserted that installment payments should have been required on a quarterly, rather than monthly basis.

On May 24, 1984, the arbitrator issued his opinion concluding that, "the Plan's determination that [Allied] withdrew from the Plan during the plan year ending June 30, 1983 and that [Allied's] withdrawal liability should therefore be determined based on the Fund's unfunded vested benefits as of June 30, 1982 is clearly erroneous and must be set aside."[3] The arbitrator further concluded that a complete withdrawal had occurred during the plan year ending June 30, 1984 and that the Plan should immediately de-

---

[1] According to the custom and usage of the welding industry, a "fixture" is a durable casement or tooling device used in the mass fabrication of steel welded parts.

[2] The Trustees do not make a claim for "partial withdrawal liability."

[3] See Arbitrator's Opinion attached as Exhibit "A" to plaintiff's complaint.

termine Allied's withdrawal liability based on the Fund's unfunded vested benefits as of June 30, 1983. However, the arbitrator did uphold the Trustees' determination that Allied's withdrawal liability should be paid monthly rather than quarterly.[4] Less than a month later, on June 22, 1984, the Trustees filed this complaint in federal court to vacate the arbitrator's award and to collect the withdrawal liability as initially determined by the Trustees.

## DISCUSSION

As a preliminary matter, this court must determine the standard of review for an arbitrator's legal rulings. Allied contends that the court's role in reviewing an arbitration award is strictly limited and is confined to determining whether or not one of the grounds specified by Section 10 of the United States Arbitration Act for vacation of an award exists.[5] Further, Allied asserts that an arbitration award will not be vacated on the ground that the arbitrator misinterpreted applicable

---

[4] Allied does not appeal this ruling of the Arbitrator.

[5] Section 10 of the United States Arbitration Act, 9 U.S.C. 10, specifies the limited grounds upon which an Arbitrator's award may be vacated, as follows:

In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

---

law. Plaintiffs on the other hand, argue that this court should decide the legal issues in this case *de novo* and not give the arbitrator's decision any deference whatsoever.

[1] This court finds that it is not bound by the legal rulings of an arbitrator's decision under the MPPAA. As the Court of Appeals for the D.C. Circuit stated:

[a]rbitration under MPPAA is quite plainly to be distinguished from arbitration based upon the contractual provisions of a collective bargaining agreement. Judicial deference to the latter kind of arbitration is mandated by Congress' preference that this contractually agreed upon vehicle for dispute resolution be the "final" method of adjustment among parties. [citations omitted] Therefore, agreements to arbitrate are routinely enforced, [citations omitted] and judicial review of arbitration decisions is very limited. [citations omitted] Under MPPAA, however, the decisions of a typical administrative agency, are fully reviewable to determine whether applicable statutory law has correctly been applied and whether the findings comport with the evidence. [citations omitted]

*I.A.M. National Pension Fund v. Stockton TRI Industries*, 727 F.2d 1204, 1207 n. 7 [5 EBC 1298] (D.C. Cir. 1984). In arguing for a strictly limited and confined judicial review, Allied fails to distinguish between arbitration under the MPPAA from arbitration based upon a collective bargaining agreement.

The cases relied on by Allied deal with arbitration in a non-MPPAA setting. The one case cited by Allied that can even remotely support its position is *Washington Star Co. v. International Typographical Union Negotiated Pension Plan*, 729 F.2d 1502 [5 EBC 1503] (D.C. Cir., 1984), an MPPAA case which states in dicta that a "court must enforce the arbitrator's decision in accordance with the United States Arbitration Act, ... which authorizes only limited review." *Id.*, at 1505. However, the very next sentence indicates

that the court is referring to an arbitrator's factual findings: "[f]urthermore, the court must presume that the arbitrator's findings of fact are correct, unless they are rebutted by a clear preponderance of the evidence . . ." *Id.* In any event, the *Washington Star* court does not refer to the legal rulings of an arbitrator, which is the problem that this court must solve. Thus, *Washington Star* is inapposite to the situation at hand.

Finally, we agree with the Fourth Circuit's interpretation of this dilemma that "[t]he clear authorization of §1401(b)(2) for judicial review 'to enforce, vacate, or modify the arbitrator's award' gives a right to review an arbitrator's legal rulings." *Republic Industries v. Teamsters Joint Council,* 718 F.2d 628, 641 [4 EBC 2057](4th Cir. 1983). Because this case involves the arbitrator's statutory interpretation of ERISA §4203(a), 29 U.S.C. §1383(a), it calls for a review of his legal ruling. Accordingly, this court will review the legal issue present in these motions *de novo.*

As stated previously, the only issue for this court to resolve is when did Allied completely withdraw from the Plan within the meaning of the MPPAA. ERISA Section 4203(a), 29 U.S.C. §1383(a), which was added by the MPPAA of 1980, defines "complete withdrawal" as follows:

For purposes of this part, a complete withdrawal from a multiemployer plan occurs when an employer—

1) permanently ceases to have an obligation to contribute under the plan, or

2) permanently ceases all covered operations under the plan.

Both parties agree that the crucial issue here is in what Plan Year, 1982 or 1983, did Allied permanently cease all covered operations under the plan.

The first obstacle which this court must hurdle is what is meant by the phrase "all covered operations." The arbitrator ruled that in the context of §1383(a), "all" means 100 percent and not some lesser amount. In reaching this conclusion, the arbitrator disregarded the legislative history of §1983(a), and instead, found that, "nothing could be clearer than the language of the statute itself that a complete withdrawal means the permanent cessation of *all* covered operations . . ." This court respectfully disagrees with the arbitrator's conclusion for we believe that the phrase "all covered operations" is not altogether clear in meaning, and thus, this court will look to the legislative history, and also, to other sources for guidance as to the proper definition of "all covered operations."

[2] The House report on the MPPAA makes clear that a virtually complete cessation of contributions, *e.g.,* a 98% reduction, will be treated as a complete withdrawal. H.R. Rep. No. 896, 96th Cong., 2d Sess. 73, *reprinted in* (1980) U.S. Code Cong. & Ad. News 2918, 2941. Regarding this piece of legislative history, one district court has noted, "[t]he case law uniformly follows this 'practical approach' in determining whether there has been a complete withdrawal." *F.H. Cobb Co. v. N.Y.S. Teamsters Conference,* 584 F. Supp. 1181, 1183 (N.D.N.Y. 1984); *see also Speckman v. Barford Chevrolet Co.,* 535 F. Supp. 488 [3 EBC 1245] (E.D. Mo. 1982). This court elects to follow this "practical approach" and concludes that the word "all" in the phrase "all covered operations" does not mean a 100% cessation of covered operations, but rather, something less than 100%. In other words, a virtually complete cessation of covered operations.

The next step is to determine what is meant by the term "covered operations." An employer "ceases covered operations" if it ceases the business activity that gave rise to contributions to the plan. *Speckman v. Barford, supra;* Ford, McNamara, and Stanger, "Withdrawal Liability Under ERISA After the Multiemployer Pension Plan Amendments Act of 1980," N.Y.U. 39th Annual Inst. on Fed. Tax., ERISA Supp., §1002 at 10-6. Accordingly, this

court must determine in what plan year did Allied accomplish a virtually complete cessation of its business activity that gave rise to its contributions to the Plan.

Plaintiffs contend that Allied ceased its covered operations under the Plan prior to July 1, 1983, and thus, were properly assessed withdrawal liability as of Plan Year ending June 30, 1982. Allied on the other hand, contends that it withdrew from the Plan subsequent to July 1, 1983, and therefore, should only be assessed withdrawal liability based on the Funds unfunded vested benefits as of June 30, 1983. At stake is approximately $235,000 — the difference between the Trustees' assessment of $559,108.57, based upon a June 30, *1982* determination, and $364,000, which would be the assessment based upon a June 30, *1983* determination.

It is undisputed that on June 16, 1982, Allied informed the Union by letter that Allied had decided to permanently shut down and close the plant operations in Bedford Park. However, an expression of intent to withdraw does not constitute an actual withdrawal within the meaning of the MPPAA. *See I.A.M. National Pension Fund Benefit Plan v. Stockton TRI Industries*, 727 F.2d at 1211.

It is also not disputed that on March 30, 1984, Allied sold the Bedford Park plant property, and officially went out of business. However, March 30, 1984 is also not the relevant date because the test is not when the employer went out of business, but rather, when did the employer cease covered operations.[6] Thus, the court must look to the period of time between June 16, 1982 and March 30, 1984, to ascertain when Allied ceased its covered operations under the Plan.

During a ten-year period ending June 30, 1982, Allied contributed over $1.3 million to the Plan, based on over 2.9 million hours worked by bargaining unit employees. Thus, the average hours worked per year by bargaining unit employees was slightly over 290,000 hours, or slightly over 24,000 hours per month. In contrast, by July 1982, the participating hours contributed by Allied to the Plan had dropped to slightly under 8,000 hours for that month. In August 1982, that number decreased even more, to just under 2,000 hours for that month. By September 1982 through December 1983, Allied's contribution hours averaged approximately 300 hours per month, which accounted for a minimal $300 a month in contributions.[7]

Moreover, in early July 1982, there were 48 bargaining unit employees on Allied's payroll at the Bedford Park plant. There were still 28 remaining in early August 1982, but by the end of that month, only five remained employed. Donald Steele, a maintenance man, remained employed at the plant until the land was sold on March 30, 1984. Charles Hearod, a fork lift operator, who was terminated in December 1982 but recalled in February 1983, also worked on the plant until March 30, 1984. Therefore, in just two months after its decision to close down operations, Allied employed merely a skeletal crew, if that, to clean and do maintenance work, and also, to identify, weigh and ship parts, scrap, raw materials and fixtures in inventory.[8]

[3] Allied points out that since February 1983, it received and processed seven purchase orders for shipment of parts. The court notes, however, that two of these orders were received prior to July 1, 1983, and the remaining five occurred in August and September 1983. In any event, these minimal activities can hardly be classified as normal business operations. In addition, the shipment of inventory to other divisions within the Allied family cannot be considered normal business activity. These are simply activities that

---

[6] *ILGWU National Retirement Fund, et al., v. Weatherall Fashions, Inc.*, No. 84 Civ. 0772, slip op. (S.D.N.Y. Feb. 24, 1986).

[7] See Stipulation of Facts, attached as Exhibit "A" to Defendant's Statement of Material Facts, p. 4.

[8] *Id.*, at 5.

are necessitated when a company has already ceased normal business operations. Accordingly this court finds that Allied ceased "all covered operations" within the meaning of the MPPAA prior to July 1, 1983. (In fact, this court opines that Allied ceased its covered operations by the very latest, December 1982).

This conclusion is supported by applicable case law. A permanent cessation can occur even though an employer remains signatory to a collective bargaining agreement requiring contributions to the plan. *Speckman v. Bedford Chevrolet Co.*, 535 F. Supp. at 491. In *Speckman*, an automobile dealership closed down and sold its facilities prior to the effective date of the MPPAA. The employer retained one employee to perform phase-out work and made pension plan contributions on behalf of that employee subsequent to the effective date of the MPPAA. The *Speckman* court held that the employer's retention of a sole employee and its contribution to the Plan on his behalf did not prevent its cessation of all covered operations from being complete within the meaning of the MPPAA.[9]

Further, in *Textile Workers Pension Fund v. Standard Dye & Finishing Co.*, 607 F. Supp. 570 [6 EBC 1562] (S.D.N.Y. 1985), the court found that where an employer which ceased its normal business operation, liquidated its assets and maintained a skeleton staff to aid in clean-up work effected a complete withdrawal from the plan.

Finally, in *ILGWU National Retirement Fund, et al., v. Weatherall Fashions, Inc.*, No. 84 Civ. 0772, slip op. (S.D.N.Y. Feb. 24, 1986), a case that closely resembles this one, the court found that the employer's minimal continued operations does not post-

pone withdrawal liability under the MPPAA. In *Weatherall*, the employer ceased covered operations in December 1981, and began rapidly winding down *meaningful* business activity, retaining only one employee, a shipping clerk. However, the firm remained in existence until 1985, when the office finally closed. The employer contended that it could not incur withdrawal liability in December 1981 because of its continuation in business until 1985. The court rejected this argument, noting that "the Fund does not assert that Weatherall went out of business in 1981, but rather that it 'ceased covered operations' in December, 1981 and that the continued viability of Weatherall's corporate form does not prevent withdrawal liability from attaching." Similarly, here the Trustees simply determined that Allied "ceased covered operations" prior to July 1, 1983, and not that Allied went out of business prior to that date. As stated previously, the facts clearly support this determination.

## CONCLUSION

The court finds that defendant Allied ceased "all covered operations" within the meaning of the MPPAA prior to July 1, 1983 as the Trustees of the Plan had originally determined. Therefore, the Trustees' withdrawal liability assessment of $559,108.57, based upon a June 30, 1982 determination is correct. Accordingly, this court recommends that plaintiff's motion for summary judgment be granted and the defendant's summary judgment motion be denied; that the arbitrator's opinion and award be vacated; and that the Trustees' withdrawal liability assessment of $559,108.57 be reinstated.[10]

---

[9] The arbitrator distinguished *Speckman* on the ground that the dealership in *Speckman* had been sold while the Bedford Park plant in this case was not sold until March 30, 1984, and that is when "all covered operations" ceased. The arbitrator misread *Speckman*. Clearly, the importance of *Speckman* centers around the retention of the one employee and the employer's contributions on his behalf.

[10] Counsel are given ten days from the date hereof to file exceptions to this Report and Recommendation with the Honorable John A. Nordberg. Failure to file objections within the specified time waives the right to appeal the magistrate's order. *Video Views, Inc., v. Studio 21, Ltd., et al.*, No. 86-1039, slip. op. at 3 (7th Cir. August 4, 1986).

**TRUSTEES, IRON WORKERS LOCAL 473 PENSION TRUST v. ALLIED PRODUCTS CORP.**

**U.S. District Court,
Northern District of Illinois,
Eastern Division**

TRUSTEES OF IRON WORKERS LOCAL 473 PENSION TRUST v. ALLIED PRODUCTS CORP., No. 84 C 5329, June 8, 1987.

On cross motions for summary judgment in action to vacate or modify arbitration award (5 EBC 1596 (1984)). Award vacated per magistrate's opinion at 8 EBC 1959.

[For list of attorneys, see opinion at 8 EBC 1959.]

*Full Text of Order*

NORDBERG, District Judge.

Having reviewed the Report and Recommendation of the Magistrate, and the pleadings, briefs and objections of the parties, the court accepts and adopts the Magistrate's Report and Recommendation, with the clarification noted on the reverse of this order, and hereby grants plaintiff's motion for summary judgment, denies defendant's motion for summary judgment, vacates the arbitrator's opinion and award, and reinstates the Trustees' withdrawal liability assessment of $559,108.57.

The court further notes that a finding that the court could not review legal conclusions of the arbitrator *de novo* would make little sense, exposing an arbitrator's factual findings to greater judicial scrutiny than his legal conclusions. Also, such a holding could render the statute unconstitutional. *See Board of Trustees of Western Conference of Teamsters Pension Trust Fund v. Thompson Building Materials, Inc.*, 749 F.2d 1396, 1404-06 [6 EBC 1233] (9th Cir. 1984) (employers not denied Article III judge because court reviews conclusion of law de novo),

*cert. denied*, 471 U.S. 1054, 105 S.Ct. 2116 [6 EBC 1640] (1985).

---

**CENTRAL STATES PENSION FUND v. 888 CORP.**

**U.S. Court of Appeals,
Sixth Circuit**

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND and HOWARD McDOUGALL, as trustee, Plaintiffs-Appellants, v. 888 CORPORATION, Defendant-Appellee, and POWERS INDUSTRIES, INC., BARRY STEEL CORPORATION and INTERVALE STEEL CORPORATION a/k/a ALAIN, INC., Third-Party Defendants-Appellees, No.85-1664/1914, June 2, 1987.

**ERISA — PROTECTION OF RIGHTS**

Administration and Enforcement — Civil Enforcement — Jurisdiction — In General (▸40.1201)

**TERMINATION INSURANCE**

Multiemployer Withdrawal Liability — Arbitration (▸175.45)

Employer's failure to exhaust statutory arbitration remedy in withdrawal liability dispute does not bar district court jurisdiction where employer's defense to fund's collection action was based on DEFRA provision eliminating retroactive MPPAA withdrawal liability that was not enacted at time of fund's payment demand or at time of deadline for requesting arbitration, since requiring prior resort to arbitration is inappropriate where employer failed to arbitrate defense it did not have, and since purposes behind exhaustion doctrine are not served by requiring arbitration in this case.

---

# TRUSTEES OF WESTERN COUNCIL LPIW-TIMBER OPERATORS PENSION FUND v. AMERICAN MAID PRODUCTS CORP.

## U.S. District Court, District of Oregon

JOINT BOARD OF TRUSTEES OF THE WESTERN COUNCIL LPIW-TIMBER OPERATORS COUNCIL PENSION FUND v. AMERICAN MAID PRODUCTS CORPORATION, dba AMERICAN LUMBER COMPANY, a corporation, Civil No. 84-832, Nov. 6, 1984.

## TERMINATION INSURANCE

### Employer Liability — Arbitration (► 171.35)

Arbitrator's award assessing multiemployer withdrawal liability is ordered enforced where employer presented no evidence to rebut correctness of arbitrator's award, since MPPAA Section 1401(c) states that there is presumption in favor of correctness of arbitrator's decision, rebuttable only by clear preponderance of evidence.

————

On pension fund trustees' motion for an order enforcing an arbitrator's award assessing withdrawal liability under MPPAA. Motion granted.

Ronald T. Adams, of Black, Helterline, Beck & Rappleyea, of Portland, Ore., and Kirke M. Hasson, Vernon H. Granneman, and Jennifer Ayres, of Pillsbury, Madison & Sutro, of San Francisco, Calif., attorneys for Joint Board of Trustees.

Kevin P. O'Connell and Nickolas J. Dibert, of Bullivant, Houser, Bailey, Pendergrass, Hoffman, O'Connell & Goyak, of Portland, Ore., attorneys for American Maid Products Corp.

## Full Text of Opinion

REDDEN, Judge.

Plaintiff, Joint Board of Trustees of the Western Council LPIW-Timber Operators Council Pension Fund (the Fund), pursuant to 29 U.S.C. §1401(b)(3) moves this court for an order enforcing the award of an arbitrator. The arbitration involved a dispute over the amount of withdrawal liability owed by defendant to plaintiff under the Multiemployer Pension Plan Amendments Act (MPPAA), 29 U.S.C. §§1381-1405. For the reasons set forth below, I grant plaintiff's motion.

## FACTUAL BACKGROUND

Defendant, American Maid Products dba American Lumber Company (American), was a participating member of the multiemployer pension fund of which plaintiff was the sponsor. In September 1982, American discontinued its participation when it ceased its production involving employees covered by the Fund. The Fund assessed a withdrawal liability pursuant to 29 U.S.C. §1382 payable in monthly installments to begin in April 1983.

Shortly thereafter the Fund issued an amended assessment and defendant disputed the amount assessed. In accordance with 29 U.S.C. §1401(a)(1), defendant requested arbitration of this dispute. On July 23, 1984 the arbitrator entered his Opinion and Award upholding the Fund's liability assessment. When defendant failed to make the required payments plaintiff filed a complaint in this court pursuant to 29 U.S.C. §1401(b)(2) to enforce the arbitrator's award. Section 1401(b)(3) provides the court with the procedural mechanism to consider the motion now pending.

## LEGAL STANDARDS

The 1974 enactment of the Employee Retirement Income Security Act (ERISA) was the government's initial attempt to regulate private pension plans in a comprehensive manner. Prior to 1974, the retirement rights of millions of employees participating in pension plans were jeopardized by the ability of employers to withdraw from the funds with impunity. Employers could simply cease to make contributions to

the funds, regardless of the vested pension rights of their employees.

In enacting ERISA in 1974, Congress sought to remedy this problem and to ensure the future viability of private pension funds. This was done by establishing a system whereby employers who withdrew from a pension plan were assessed a liability. This withdrawal liability was extended to multiemployer pension plans in 1980 by the enactment of the MPPAA. Pub.L.No. 96-364, 29 U.S.C. §§ 1381-1405.

Under the MPPAA, an employer who withdraws from an on-going multiemployer pension plan incurs an immediate liability for a reasonable share of the plan's vested benefits. 29 U.S.C. § 1381. When such a withdrawal occurs, it is the duty of the plan to determine the amount of the employer's withdrawal liability and notify the employer of that amount. 29 U.S.C. § 1382.

If the employer disputes this determination, either the employer or the Fund may initiate an arbitration proceeding. 29 U.S.C. § 1401(a)(1). If either party elects arbitration, the MPPAA instructs the arbitrator to presume that the Fund's determination is correct unless "unreasonable or clearly erroneous." 29 U.S.C. § 1401(a)(3)(A).

### DISCUSSION

Defendant contends that plaintiff fails to state under which Federal Rule of Civil Procedure this motion was brought. Defendant further states that it must necessarily be a Rule 56 motion for summary judgment, and that it is deficient as presented. These allegations are completely without merit. This motion is brought pursuant to § 1401(b)(3) of the MPPAA, and meets all specifications contained therein.

Defendant also opposes this motion on the grounds that the presumption of the correctness of the Fund's assessment of the withdrawal liability upon arbitration in § 1401(a)(3)(A) is violative of the due process clause of the Fifth Amendment. In support of this contention defendant relies on *Fulton & Sons, Inc. v. New England Teamsters & Trucking Industry Pension Fund*, No. 83-1804, slip op. [5 EBC 1761] (1st Cir. Aug. 6, 1984), in which the Court held that the presumption in § 1401(a)(3)(A) is violative of due process under the Fifth Amendment. However, this decision was withdrawn by the First Circuit and the panel's judgment with respect to the constitutionality of 29 U.S.C. § 1401(a)(3) was vacated on October 22, 1984 [5 EBC 2491]. Moreover, other Circuits have found the provision to be constitutional. *Washington Star Co. v. International Typographical Union Negotiated Pension Plan*, 729 F.2d 1502, 1511 [5 EBC 1503] (D.C. Cir. 1984), *Textile Workers Pension Fund v. Standard Dye & Finishing*, 725 F.2d 843, 854-55 [5 EBC 1001] (2d Cir. 1984), *Republic Industries v. Teamsters Joint Council No. 83 of Virginia Pension Fund*, 718 F.2d 628, 640-41 [4 EBC 2057] (4th Cir. 1983).

### CONCLUSION

Section 1401(c) states that there is a presumption in favor of the correctness of the arbitrator's decision, rebuttable only by a clear preponderance of the evidence. Defendant has presented no evidence to rebut the correctness of the arbitrator's award. I therefore enforce the award.

Dated this 3 day of November, 1984.

### ORDER

This matter having come on for hearing on the motion of plaintiff, Joint Board of Trustees of the Western Council LPIW-Timber Operators Council Pension Fund (the Fund) for an Order enforcing an arbitration decision against defendant, American Maid Products Corporation dba American Lumber Company (American), and good cause showing, IT IS ORDERED that:

1. The decision of July 23, 1984, in Arbitration No. 75-62-0004-83 MEPP is enforced;

2. The Fund shall recover from defendant the following sums:

Flight Officers, Inc. v. United Air Lines                    6 EBC 1075

| | | |
|---|---|---|
| a. | Principal: | $195,103.00 |
| b. | Interest to October 15, 1984 (plus $70.43 per day for each day thereafter, until the date of this Judgment): | |
| c. | Attorney's Fees and Costs | $33,492.54 In an amount to be determined post judgment |

IT IS FURTHER ORDERED that interest shall accrue on the principal withdrawal liability of $195,103.00, at the rate specified in 29 C.F.R. Part 2644, and on the remainder of the items at the rate provided by law for judgments in 28 U.S.C. §1961.

IT IS FURTHER ORDERED that the amount of attorney's fees to which plaintiff is entitled under this Order shall be determined by a motion to be made at a later date.

Dated this 6 day of November, 1984.

---

# FLIGHT OFFICERS, INC. v. UNITED AIR LINES

## U.S. Court of Appeals, Seventh Circuit

UNITED INDEPENDENT FLIGHT OFFICERS, INC., et al., Plaintiffs-Appellants, v. UNITED AIR LINES, INC., and AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Defendants-Appellees, No. 83-2572, Jan. 17, 1985.

## ERISA — PROTECTION OF RIGHTS

### Definitions — Fiduciary (► 5.31)

[1] Union is not acting as pension plan fiduciary while, or merely because, it is negotiating terms and conditions of future pension benefits, at least where these benefits are not protected under ERISA's vesting and nonforfeitability provisions, since duties imposed on ERISA fiduciary are inconsistent with demands of negotiation and collective bargaining.

### Definitions — Fiduciary (► 5.31)

[2] Employer is not acting as pension plan fiduciary when it negotiates pension benefit changes in collective bargaining, even though it also is plan administrator, since administrator is fiduciary only to extent it is engaged in administration and tasks of administration do not extend to negotiating terms of collective bargaining agreement.

### Fiduciary Responsibility — Fiduciary Duties — In General (► 20.205)

## INTERNAL REVENUE CODE

### Taxation of Beneficiary — Tax on Lump Sum Distributions (► 82.25)

[3] Employer did not breach ERISA fiduciary duties to certain retirees when it negotiated and implemented new lump sum pension distribution option that did not provide tax-free lump sum rollover treatment for employees who had retired and already had received periodic payments during period retroactively covered by pension negotiations, since employer had no fiduciary duties as administrator with respect to such option until it was included in plan, since employer kept claimants informed of their benefit options and consequences thereof, and since it applied to IRS for ruling allowing tax-free rollover treatment sought by claimants and informed claimants when its efforts proved unsuccessful.

## ERISA — PROTECTION OF RIGHTS

### Fiduciary Responsibility — Statute of Limitations (► 20.80)

## LABOR LAWS

### Union Obligations — Fair Representation (► 226.03)

[4] Retirees' claim against union for breach of duty of fair representation in connection with negotiation of certain pension plan changes was not timely filed under six-month limitations period applied in Del Costello decision, which applies rather than ERISA's three-year period or Illinois' 10-year limitation on contract actions, since claim is creature of labor law and not contract law; fact that claim is closely tied to ERISA claim for breach of fiduciary duty does not require that ERISA limitations period be applied, especially where dispute concerns plan negotiation and implementation rather than settlement of grievance taken under existing plan.

---